UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                  **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Present: The Honorable        CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Aaron Rubin                                        Hutson Smelley

Khai LeQuang

**Proceedings:**     TELEPHONE HEARING ON DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Dkt. [ 26 ], filed May 19, 2020)

## I.    INTRODUCTION

Plaintiffs filed this action against defendant Transamerica Life Insurance Company ("Transamerica") on March 16, 2020. Dkt. 1 ("Compl."). Plaintiffs' complaint asserts the following claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing sounding in contract; (3) breach of the implied covenant of good faith and fair dealing sounding in tort; (4) conversion; and (5) declaratory relief. Id. The gravamen of plaintiffs' complaint is that Transamerica wrongfully increased the monthly deduction rates ("MDRs") of certain universal life insurance policies. See generally id.

On May 19, 2020, Transamerica filed a motion to dismiss. Dkt. 26-1 ("Mot."). Plaintiffs filed an opposition on June 22, 2020. Dkt. 34 ("Opp."). Transamerica filed a reply on June 29, 2020. Dkt. 35 ("Reply").

The Court held a hearing on July 13, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    The Parties

Plaintiff Primary MasterBareAF PTC Limited is the trustee of CSSEL Guernsey Bare Trust, which is domiciled in Guernsey. Compl. ¶ 23. Plaintiffs Credit Suisse Lending Trust (USA) and Credit Suisse Lending Trust (USA) 5 are Delaware statutory trusts. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

¶¶ 24–25.  Plaintiffs are the owners, assignees, or beneficiaries of certain universal life insurance policies issued by Transamerica.  <u>Id.</u> ¶¶ 23–25.

Transamerica is an Iowa corporation with its principal place of business in Iowa. Compl. ¶ 26.  Plaintiffs allege that Transamerica is authorized to do (and does) substantial business in California.  <u>Id.</u>

**B.       Transamerica's MDR Increases**

At issue in this case are Transamerica's universal life insurance policies, which contain two components: (1) a "mortality" component, for which Transamerica charges a cost to cover risk of the insured's death ("the cost of insurance"); and (2) a "cash value" component, where premiums paid in excess of the cost of insurance and other charges accumulate ("the Accumulation Value") and earn interest. Compl. ¶ 8.  No fixed premiums are due under Transamerica's universal life insurance policies—instead, Transamerica deducts funds from the accounts (the MDRs) to cover the cost of insurance and other charges.  <u>Id.</u> ¶ 12.  If a policyholder's account does not have sufficient funds to cover these monthly charges, the policy will enter a grace period and lapse unless additional premiums are paid.  <u>Id.</u>

Transamerica's universal life insurance policies consist of both guaranteed and non-guaranteed elements.  Compl. ¶ 13.  Guaranteed elements—including the guaranteed minimum interest rate on which interest on the Accumulation Values accrue—are fixed and determined at a specific time, such as when a given policy is issued.  <u>Id.</u>  Transamerica may, however, adjust non-guaranteed elements, such as the MDRs, consistent with its universal life insurance policies' terms.  <u>Id.</u>

Plaintiffs' policies indicate that Transamerica "will determine the Monthly Deduction Rate for each policy month at the beginning of that policy month."  Compl. ¶ 44.  Plaintiffs further allege that at least some of their policies further provide that "[a]ny change in the Monthly Deduction Rates will be prospective and will be subject to our expectations as to future cost factors.  Such cost factors may include, but are not limited to: mortality; expenses; interest; persistency; and any applicable federal, state and local taxes."  <u>Id.</u>  Plaintiffs further allege that their policies indicate that Transamerica "does not distribute past surplus or recover past losses by changing the Monthly Deduction Rates." <u>Id.</u> ¶ 45.  Accordingly, the terms of plaintiffs' policies limit Transamerica's ability raise the MDRs in two critical ways—any change: "(a) can only be based on Transamerica's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

expectations as to future cost factors; and (b) must be prospective only: Transamerica cannot change rates to recover past losses (or distribute past surplus)." Id. ¶ 46.

Plaintiffs allege that in June 2015, Transamerica began raising the MDRs in a manner that violated the policies' terms. Compl. ¶ 47. According to plaintiffs, "[b]y raising the Monthly Deduction Rates on the Policies, in some cases as much as 74%, without a proper basis, Transamerica has breached the express and implied terms of the Policies." Id. ¶ 4. Plaintiffs further contend that the purpose of these increases is "to force [p]laintiffs and other policyholders either to (a) pay exorbitant premiums that Transamerica knows would no longer justify the ultimate death benefits or (b) lapse or surrender their policies and forfeit the premiums they have paid to date, thereby depriving policyholders of the benefits of their policies." Id. ¶ 18.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing that jurisdiction is proper." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006)). The plaintiff cannot simply rely on the "bare allegations" of its complaint; however, uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154–55. "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." Boschetto, 539 F.3d at 1015. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Schwarzenegger,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

374 F.3d at 801 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

### 1.    General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting International Shoe, 326 U.S. at 317). A corporation's place of incorporation and principal place of business are the paradigmatic bases for general jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). Otherwise, "[t]he standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 579 (9th Cir. 2011) (quoting International Shoe, 326 U.S. at 318). The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1224 (9th Cir. 2011).

### 2.    Specific Jurisdiction

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

(1) The defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

(2) The claim must arise out of or result from the defendant's forum-related activities; and

(3) Exercise of jurisdiction must be reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Rano, 987 F.2d at 588; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and if either is not satisfied, personal jurisdiction is not established. Schwarzenegger, 374 F.3d at 802.

In contracts cases, courts conduct a "purposeful availment" analysis to determine the first prong of the specific jurisdiction test. Id. Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether purposeful availment has occurred: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. Burger King, 471 U.S. at 478–79. A single contract for the sale of goods to a plaintiff in the forum state may be sufficient for specific jurisdiction over a defendant, but only where the contract creates a "substantial connection" with the forum state. Boschetto, 539 F.3d at 1017. "The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction," without more. Gray & Co. v. Firstenberg Mach. Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990).

If the plaintiff establishes the first two prongs regarding purposeful availment and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).

**B.**      **Rule 12(b)(6)**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under 12(b)(6), a district court should dismiss a claim if "there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a 12(b)(6) motion, a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1988). A court must read the complaint in the light most favorable to the non-movant. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a 12(b)(6) motion into a motion for summary judgment, the court cannot consider material outside of the complaint, such as facts presented in briefs, affidavits, or discovery materials. In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). However, a court may consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be granted freely. Fed. R. Civ. P. 15(a). However, the court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

## IV.   DISCUSSION

### A.   Personal Jurisdiction

Transamerica first moves to dismiss plaintiffs' claims on the grounds that the Court cannot exercise personal jurisdiction over Transamerica. Mot. at 7. Transamerica contends that the Court may not exercise general jurisdiction over it because Transamerica is not "at home" in California since Transamerica is incorporated in Iowa and maintains its principal place of business in Iowa. Id. at 8–9. Transamerica further asserts that the Court may not exercise specific personal jurisdiction over Transamerica because, according to Transamerica, "[p]laintiffs allege no substantial connection between the conduct that allegedly harmed them—the decisions to increase MDRs and subsequent implementation of the increases—and California." Id. at 10.

#### 1.   Purposeful Availment

The first prong of the specific jurisdiction analysis requires that a non-resident defendant "purposefully avail [itself] of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws[.]" In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 741–42 (9th Cir. 2013) (internal citation omitted). For a case sounding in contract, "[a] showing that a defendant purposefully availed [itself] . . . typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 374 F.3d at 802. "For tort-based claims, the Ninth Circuit has stated that a court may exercise personal jurisdiction over a defendant "whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." Healthcare Ally Mgmt. of California, LLC v. Med. Mut. of Ohio, No. 2:14-cv-09428-SJO-JEM, 2015 WL 12746216, at *5 (C.D. Cal. Jan. 26, 2015).

Here, plaintiffs offer evidence demonstrating that, notwithstanding Transamerica's Iowa citizenship, Transamerica has purposely availed itself of the privileges of this forum. For example, plaintiffs contend that "the policies were developed, priced and marketed in Los Angeles; Transamerica signed and issued the policies from its Los Angeles office; several of the policies identify Los Angeles as Transamerica's 'Home Office' or 'Marketing Office'; Transamerica issued illustrations from its Los Angeles office; and key Transamerica employees behind the MDR increases operated out of Los Angeles." Opp. at 6; Dkt. 34-1, Declaration of David Gomez ("Gomez Decl."). In at least four other cases challenging Transamerica's MDR increases, the Court has found similar factors sufficient to conclude that Transamerica has purposely availed itself of the privileges of doing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|----------|-------------------------|------|---------------|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

business in California. See Wells Fargo Bank, Nat'l Ass'n v. Transamerica Life Ins. Co., No. 2:19-cv-06478-CAS-GJS, 2020 WL 833518, at *6 (C.D. Cal. Feb. 19, 2020); Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 6315541, at *7 (C.D. Cal. Aug. 28, 2019); Hamra v. Transamerica Life Ins. Co., No. 2:18-cv-06262-CAS-GJS, 2019 WL 468803, at *5 (C.D. Cal. Feb. 6, 2019); Feller v. Transamerica Life Ins. Co., No. 2:16-cv-01378-CAS-AJW, 2017 WL 6453262, at *5 (C.D. Cal. Dec. 11, 2017).

### 2.    Forum-Related Activities

The second prong of the specific personal jurisdiction analysis requires that plaintiffs' claims arise out of, or relate to, Transamerica's forum-related activities. Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal citation omitted). The Ninth Circuit applies a "but for" test to determine whether claims relate to forum-related activities. Monster Energy Co. v. Vital Pharm., Inc., No. 5:18-cv-01882-JGB-SHK, 2019 WL 2619666, at *7 (C.D. Cal. May 20, 2019) (citing Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995)). Under this test, the question is: but for Transamerica's conduct in California, would plaintiffs' claims have arisen? As the Court has previously observed, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." Feller, 2017 WL 6453262, at *6 (citing Dubose v. Bristol-Myers Squibb Co., No. 17-cv-00244-JST, 2017 WL 2775034, at *3 (N.D. Cal. June 27, 2017)).

Transamerica argues that plaintiffs cannot make the required showing of a nexus between plaintiffs' claims and Transamerica's California contacts. Mot. at 9–10. That is because, according to Transamerica, "[p]laintiffs' reliance on conduct at or before the Policies were issued and on this Court's decisions in prior cases against [Transamerica] is misplaced." Reply at 4–5. The Court finds Transamerica's argument unpersuasive.

Here, plaintiffs have presented a causal chain sufficient to establish a nexus between plaintiffs' claims and Transamerica's California contacts. Indeed, plaintiffs aver that "the policies were developed, priced and marketed in Los Angeles; Transamerica signed and issued the policies from its Los Angeles office; several of the policies identify Los Angeles as Transamerica's 'Home Office' or 'Marketing Office'; Transamerica issued illustrations from its Los Angeles office; and key Transamerica employees behind the MDR increases operated out of Los Angeles." Opp. at 6. The Court has found identical considerations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

sufficient to establish a nexus between policyholders' claims and Transamerica's California contacts. See Wells Fargo, 2020 WL 833518, at *6.

These allegations are sufficient to establish, at this juncture, that but-for Transamerica's conduct in California, including signing each of the 30 policies at issue in this case, and the work of Transamerica's Los Angeles employees, plaintiffs' claims would not have arisen. See Wells Fargo, 2020 WL 833518, at *6 (finding that allegations that, *inter alia*, signing of policies in California and work of Transamerica employees California were sufficient to satisfy nexus prong); Feller, 2017 WL 6453262, at *6 (finding sufficient nexus based, in part, on similar allegations regarding involvement of former Los Angeles-based employees in Transamerica's MDR increases); see also LSH CO v. Transamerica Life Ins. Co., No. 2:18-cv-09711-SJO-KS, 2019 WL 3064422, at *6 (C.D. Cal. Mar. 20, 2019) (finding sufficient nexus between plaintiffs' claims related to MDR increases and Transamerica's contacts with California where fifteen of twenty-two policies identified Los Angeles as Transamerica's home office and remaining seven identified Los Angeles as Transamerica's marketing office). Accordingly, the Court concludes that there is "an affiliation between the forum and the underlying controversy" sufficient to allow the Court to exercise specific personal jurisdiction over Transamerica. Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017); accord Brighton Trustees, 2019 WL 6315541, at *8 (finding that plaintiffs challenging Transamerica's MDR increases had satisfied nexus requirement so as to allow the Court to exercise specific personal jurisdiction over Transamerica).

### 3. Reasonableness

Plaintiffs have established the first two prongs regarding purposeful availment and Transamerica's forum-related activities. Therefore, it is Transamerica's burden to "present a compelling case that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance several factors: (1) the extent of the defendant's purposeful availment; (2) the burden on the defendant; (3) conflicts of law between the forum state and the defendant's state; (4) the forum's interest in adjudicating the dispute; (5) judicial efficiency; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Roth, 942 F.2d at 623.

The Court notes that Transamerica does not argue that exercising specific personal jurisdiction in the Central District would not "comport with fair play and substantial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

justice." See Mot. at 7–10; Reply at 3–5.  That alone defeats Transamerica's specific personal jurisdiction challenge.  See Wells Fargo, 2020 WL 833518, at *7 (finding that plaintiffs challenging Transamerica's MDR increases established that it would reasonable to require Transamerica to defend case in Central District where plaintiffs made a prima facie showing regarding first two specific jurisdiction prongs and Transamerica did not specifically contest reasonableness under third prong); LSH CO, 2019 WL 3064422, at *7 (finding that it would be reasonable to exercise specific personal jurisdiction over Transamerica in the Central District in case challenging Transamerica's MDR increases because "Plaintiffs have met their burden of proving the first two prongs of specific jurisdiction and Defendant does not contest the third."); accord Galaxia Elecs. Co. v. Luxmax, U.S.A., No. 2:16-cv-05144-JAK-GJS, 2017 WL 2903182, at *10 (C.D. Cal. May 10, 2017) (denying motion to dismiss for lack of personal jurisdiction where plaintiffs made prima facie showing under "the first two prongs of the test for personal jurisdiction . . . [and] Defendants have made no such arguments" that exercise of jurisdiction would not be reasonable).

Transamerica has sufficient contacts with the forum, and litigating in the Central District of California, where a number of other actions involving Transamerica and its purported MDR increases remain pending, would not be unreasonable with respect to Transamerica.  See Wells Fargo, 2020 WL 833518, at *7 (finding it would be reasonable to exercise specific personal jurisdiction over Transamerica in the Central District); Hamra, 2019 WL 468803, at *6 (same); Feller, 2017 WL 6453262, at *8 (same); Brighton Trustees, 2019 WL 6315541, at *9 (same).  The Court therefore concludes that the exercise of personal jurisdiction over Transamerica with respect to plaintiffs' claims is proper under the Due Process Clause.  For these reasons, the Court **DENIES** Transamerica's motion to dismiss for lack of personal jurisdiction.[1]

**B.   Failure to State a Claim**

**1.   Breach of Contract Claim**

Plaintiffs' breach of contract claim asserts that Transamerica breached the express terms of plaintiffs' policies in four respects: (1) by increasing the MDRs for reasons other

---

[1]   Because the Court concludes that it may properly exercise specific jurisdiction over Transamerica, the Court does not reach the issue of whether Transamerica is subject to general jurisdiction in this forum.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                   **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

than changes to Transamerica's future cost expectations; (2) by increasing the MDRs in an attempt to circumvent the guaranteed minimum interest rate; (3) by increasing the MDRs in an attempt to recoup past losses and recover for shortfalls in expected revenues; and (4) by imposing excessive MDRs, including by failing to lower these rates.  Compl. ¶ 77(a)–(d).  Transamerica moves to dismiss plaintiffs' breach of contract claim, in part, insofar as it is premised on plaintiffs' allegations that Transamerica increased the MDRs in an attempt to circumvent the guaranteed minimum interest rate.  Mot. at 10–11.

To state a claim for breach of contract under California law, a party must plead: "(1) the existence of the contract , (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (internal citation omitted).  At the pleading stage, "[w]hen reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must determine whether the alleged agreement is '*reasonably susceptible*' to the meaning ascribed to it in the complaint."  Hervey v. Mercury Casualty Co., 185 Cal. App. 4th 954, 964 (2010) (emphasis added) (citation omitted).  "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement."  Marzec v. California Pub. Employees Ret. Sys., 236 Cal. App. 4th 889, 909 (2015) (citing Aragon–Haas v. Family Security Ins. Services, Inc., 231 Cal. App. 3d 232, 239 (1991)).  Where the terms of the policy are unambiguous, the Court will not infer a limitation on defendants which is not supported by the language of the policy.  See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) ¶ 4:11 ("'Clear and explicit' policy language governs.") (quoting Powerine Oil Co., Inc. v. Supt. Ct., 37 Cal. 4th 377, 390 (2005)).

In other cases where policyholders have challenged Transamerica's alleged attempts to circumvent the guaranteed minimum interest rate as breaches of the express terms of Transamerica's policies, the Court has distinguished between policies which list "interest" as an enumerated cost factor that Transamerica may consider in setting its MDRs, and those policies that do not.  See, e.g., Wells Fargo, 2020 WL 833518, at *8 (dismissing policyholders' breach of contract claim against Transamerica as to those policies which included "interest" as an enumerated cost factor, but denying motion to dismiss breach of contract claim as to those policies which did not include "interest" as an enumerated cost factor).  Following the hearing, the parties filed a joint statement indicating that "27 of the 30 Plaintiff Policies include 'interest' as an enumerated cost factor (and, therefore, 3 of the Plaintiff Policies do not include 'interest' as an enumerated cost factor)."  Dkt. 37 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Accordingly, as to the twenty-seven policies that include "interest" as an enumerated cost factor, plaintiffs fail to state a claim, and the Court **DISMISSES** plaintiffs' breach of contract claim, as alleged in ¶ 77(b) of the complaint, **without prejudice**.

**2.      Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Claim**

With respect to the policies that Transamerica issued in California, plaintiffs assert, pursuant to California law, a claim for breach of the implied covenant of good faith and fair dealing sounding in tort.  See Compl. ¶¶ 87–97.  Plaintiffs allege that Transamerica breached the implied covenant, giving rise to a claim sounding in tort, by, *inter alia*: (1) "charging excessive Monthly Deduction Rates, thereby denying [p]laintiffs the benefit of their actual policy Accumulation Values; (2) "increasing the Monthly Deduction Rates to circumvent the guaranteed minimum interest rate"; and (3) "attempting to force [p]laintiffs and other policyholders either to (a) pay exorbitant premiums that Transamerica knows would no longer justify the ultimate death benefits or (b) lapse or surrender their Policies; thereby forfeiting the premiums they have paid to date[.]"  Id. ¶ 90(a)(d)(e).

**a.      Denial of Insurance Benefit**

In other cases where policyholders have challenged Transamerica's MDR increases as a breach of the implied covenant sounding in tort, "the Court has previously distinguished allegations that Transamerica has denied policyholders an 'insurance benefit' from allegations that Transamerica has attempted to induce, in bad faith, policyholders to lapse or surrender their policies."  EFG Bank AG v. Transamerica Life Ins. Co., No. 2:16-cv-08104-CAS-GJS, 2020 WL 1849493, at *3 (C.D. Cal. Apr. 13, 2020).  To the extent that policyholders have alleged that Transamerica charged excessive MDRs in an attempt to minimize policyholders' Accumulation Values and accrual of interest on those accounts, the Court has concluded that those allegations are insufficient to state a claim for breach of the implied covenant sounding in tort.  See, e.g., Draeger v. Transamerica Life Ins. Co., No. 2:19-cv-10478-CAS-GJS, 2020 WL 2542060, at *3 (C.D. Cal. May 18, 2020).  The Court has explained that allegations regarding Transamerica's alleged deprivation of policyholders' Accumulation Values and accrued interest "relates to the *savings* component of Transamerica's universal life insurance policies, rather than the *insurance* component, and therefore does not implicate the special relationship between insureds and insurer that animates the narrow exception providing a tort claim in the insurance context."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

<u>Draeger</u>, 2020 WL 2542060, at *3 (internal citation and quotation marks omitted) (emphases in original).

Here, plaintiffs argue that the complaint "sufficiently alleges that Transamerica withheld those policy benefits, which could be nothing besides insurance." Opp. at 14. That is because, according to plaintiffs, "[t]he Accumulation Values were regulated as insurance, were part of the death benefit to be paid upon the death of the insured, and were marketed as insurance." <u>Id.</u> The Court has previously rejected each of these arguments. <u>See, e.g.</u>, <u>Wells Fargo</u>, 2020 WL 833518, at *10 n.4 (rejecting argument "that the Accumulation Value 'is insurance' because the agreement which creates the Accumulation Value, Transamerica's universal life insurance policy, is an insurance contract" and explaining that "[n]otwithstanding the fact that Transamerica's universal life insurance policies create the Accumulation Values and that these policies may be subject to the California Insurance Code, . . . the Accumulation Values are not 'insurance' benefits."); <u>Brighton</u>, 2019 WL 5784925, at *4 (rejecting argument that denial of Accumulation Value and accrued interest implicates "insurance benefit" where policyholders alleged that Accumulation Value "makes up part of the death benefit" since Transamerica used Accumulation Value "to fund the policy charges" and that Accumulation Value "is paid out only upon the death of the insured.") (internal emphasis omitted) (internal quotation marks and alterations omitted). Accordingly, to the extent that plaintiffs' claim for tortious breach of the implied covenant is based on allegations that Transamerica has deprived plaintiffs of the benefits of their Accumulation Values and the guaranteed monthly accrual of interest on those values, the Court concludes that plaintiffs fail to state a claim for tortious breach of the implied covenant.[2]

### b.   <u>Jonathan Neil</u> Factors

In other cases where policyholders have asserted a claim for tortious breach of the implied covenant against Transamerica based on allegations that Transamerica increased its MDRs in an attempt to induce policy lapses or surrenders, the Court has recognized that

---

[2]     Plaintiffs indicate that, with respect to their contentions that the denial of plaintiffs' Accumulation Values and accrued interest implicates an "insurance benefit" sufficient to give rise to a tort claim, plaintiffs "incorporate the same opposing arguments put forth by the <u>Brighton</u>, <u>EFG</u>, and <u>Wells Fargo</u> plaintiffs[.]" Opp. at 15. Plaintiffs in this case, however, fail to provide a compelling basis for the Court to depart from its reasoning in <u>Brighton Trustees</u>, <u>EFG Bank</u>, and <u>Wells Fargo</u>.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|----------|--------------------------|------|----------------|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

in <u>Jonathan Neil</u>, the California Supreme Court suggested a number of factors that courts should consider in determining whether to extend the tort claim outside the denial of benefits and mishandling contexts. <u>See</u> <u>EFG Bank</u>, 2020 WL 1849493, at *4. These factors include "(1) the ability of marketplace competition to discipline the insurer's alleged misconduct; (2) whether the alleged misconduct denies the insured the benefits of the insurance policy, namely the security against losses and third party liability; (3) whether the alleged misconduct required the insureds to prosecute the insurer in order to enforce its rights; and (4) the availability of other administrative, contractual, and tort remedies." <u>Draeger</u>, 2020 WL 2542060, at *3. The Court has further distinguished—for the purposes of the tortious breach claim—between policyholders that purchased their policies from Transamerica and policyholders that purchased policies on the secondary market.

For example, in <u>Thompson v. Transamerica</u>, the Court determined that Transamerica's alleged use of MDR increases to induce, in bad faith, policy lapses or surrenders, could, taken together with additional factual allegations, give rise to a claim for breach of the implied covenant sounding in tort. <u>See</u> No. 2:18-cv-05422-CAS-GJS, 2018 WL 6790561, at *11 (C.D. Cal. Dec. 26, 2018). In that case, the Court concluded that "extending the tort remedy . . . is justified to deter insurers from unreasonably increasing premiums to induce early surrender or lapses of life insurance policies *held by people who cannot turn to the market and obtain another policy due to the advanced age of the insureds*." <u>Id.</u> (emphasis added).

In subsequent cases, the Court has determined that "[t]he factual allegations present in <u>Thompson</u> that warranted the Court's extending the tort remedy to the plaintiffs in that case are not present" in cases where the policyholders purchased Transamerica's policies on the secondary market. <u>See, e.g.</u>, <u>Brighton</u>, 2019 WL 6315541, at *14. For example, in <u>Brighton</u>, the Court noted that "unlike the plaintiffs in <u>Thompson</u>, elderly individuals that purchased Transamerica universal life insurance policies, the plaintiffs in this case consist of a trust, two banks, and three institutional investors." <u>Id.</u> Thus, because "a market exists . . . that would allow plaintiffs in this case to resell their interests in the policies to other investors," the Court explained that institutional investors "are not situated similarly to the plaintiffs in <u>Thompson</u> who 'have nowhere else to turn to obtain the 'peace of mind and security' that they bargained for when they purchased the Policies.'" <u>Brighton</u>, 2019 WL 6315541, at *14 (citing <u>Thompson</u>, 2018 WL 6790561, at *11). The Court has since consistently declined to extend the tort claim to investors that purchased their policies on the secondary market. <u>See, e.g.</u>, <u>EFG Bank AG, Cayman Branch v. Transamerica Life Ins. Co.</u>, No. 2:16-cv-08104-CAS-GJS, 2020 WL 636907, at *8 (C.D. Cal. Feb. 10, 2020)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|----------|--------------------------|------|----------------|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

(concluding, in case where plaintiffs were institutional investors that purchased policies on secondary market, that consideration of "the factors that the California Supreme Court suggested in Jonathan Neil . . . does not favor extending the tort remedy to institutional investors); Wells Fargo Bank, Nat'l Ass'n v. Transamerica Life Ins. Co., No. 2:19-cv-06478-CAS-GJS, 2020 WL 3440549, at *6 (C.D. Cal. June 22, 2020) (same); accord Draeger, 2020 WL 2542060, at *4 (declining to extend tort claim to individual investor who purchased "policy on the secondary market" and reasoning that "[w]hile the Court determined in Thompson that extending the tort remedy to elderly insureds was necessary to deter Transamerica's alleged misconduct, plaintiffs here fail to establish . . . why *further* extending the tort remedy to individual investors is necessary to deter insurer misconduct.") (emphasis in original).

    Plaintiffs here contend that they are more similarly situated to the plaintiffs in Thompson than the plaintiffs "in Brighton, EFG, and Wells Fargo because the original policyholders still own the life insurance policies at issue[.]" Opp. at 1–2. With these principles in mind, the Court considers whether the pertinent Jonathan Neil factors favor extending the tort claim to plaintiffs in this case.

**i.      Discipline by the Secondary Market**

    Plaintiffs allege that "[i]f companies like Transamerica are not deterred from" raising MDRs in order to induce policy lapses or surrenders, "they will cripple—if not ultimately destroy—the secondary market because secondary market purchasers will not want to incur the risks of such unlawful rate increases." Compl. ¶ 37. Plaintiffs urge that "[w]ithout the ability to deter and protect themselves against insurance company bad faith conduct (as distinct from mere contact breach), third-party policy buyers will not be willing to pay as much for policies as they previously did because the insurance companies have less downside for their tortious conduct[.]" Opp. at 15–16. The Court does not find plaintiffs' arguments availing.

    In Jonathan Neil, the California Supreme Court declined to extend the tort claim to plaintiffs challenging an insurer's practice of knowingly and retroactively billing insureds for higher premiums than were actually owed. 33 Cal. 4th at 939. The California Supreme Court "first observe[d] that, generally speaking, the insurer's ability to charge excessive premiums will be disciplined by competition among insurers." Id. On this point, that California Supreme Court cited its earlier opinion in Foley v. Interactive Data Corp., wherein the California Supreme Court previously declined to extend the tort claim to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|----------|--------------------------|------|----------------|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

employer-employee relationship.  See Jonathan Neil, 33 Cal. 4th at 938 (citing Foley v. Interactive Data Corp., 47 Cal. 3d 654, 692 (1988)).  In Foley, the California Supreme Court explained the differences in the relationships between insurer and insured and between employer and employee: "a breach in the employment context does not place the employee in the same economic dilemma that an insured faces when an insurer in bad faith refuses to pay a claim or to accept a settlement offer within policy limits.  When an insurer takes such actions, the insured cannot turn to the marketplace to find another insurance company willing to pay for the loss already incurred.   The wrongfully terminated employee, on the other hand, can (and must, in order to mitigate damages) make reasonable efforts to seek alternative employment."  47 Cal. 3d at 692.

In subsequent cases where policyholders that acquired their Transamerica policies on the secondary market have challenged Transamerica's MDR increases as a breach of the implied covenant sounding in tort, "the Court has consistently determined that while concerns regarding marketplace competition may justify extending the tort claim to elderly insureds, these concerns do not warrant extending the claim to institutional investors." EFG Bank, 2020 WL 1849493, at *8 (collecting cases); see also Draeger, 2020 WL 2542060, at *4 (determining that extending tort claim to individual investor that acquired Transamerica policy on secondary market was not necessary to deter Transamerica's alleged misconduct).  The Court has explained that "[i]n general, insurance policies are not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of an accident or other catastrophe."  EFG Bank, 2020 WL 1849493, at *6 (citing Cates Constr., Inc. v. Talbot Partners, 21 Cal. 4th 28, 44 (1999)).  Thus, "[t]he 'economic dilemma' that an insured faces when the insurer breaches the terms of the insured's policy—peace of mind and security for both the insured and the beneficiaries of the insured's policy—is simply not comparable to the possible diminished profits that an institutional investor may suffer where an insurer breaches the terms of a policy that the institutional investor purchased on the secondary market."  EFG Bank, 2020 WL 1849493, at *6; accord Draeger, 2020 WL 2542060, at *4 (finding that individual that purchased policy on secondary market did not face same "economic dilemma" as plaintiffs in Thompson where individual ultimately resold "the policy for the best price available, which was $150,000.").

Here, plaintiffs aver that "the initial policyholders, who still own the Policies, have a pecuniary interest in the outcome of this lawsuit."  Opp. at 9.  That is because plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

acquired several of the policies at issue in this case through "premium finance loans."[3] Compl. ¶ 39. According to plaintiffs, then, "[w]ithout giving [p]laintiffs the ability to assert a tortious breach claim, the individual insureds whose Policies are at issue will face the same irreparable harms that the Thompson plaintiffs did." Id. at 10. The Court disagrees.

Plaintiffs allege that "[w]ith respect to the policies acquired through premium finance loans, the policies are held, or were previously held, by insurance trusts created by the insureds, which collaterally assigned all their right, title, and interest . . . to the [p]laintiffs . . . as security for the premium finance loans." Compl. ¶ 39. According to plaintiffs, they "issued the premium finance loans to consumers pursuant to financing agreements. However, under these financing agreements, [plaintiffs] were not obligated to make additional advances to cover the premium increase resulting from Transamerica's Monthly Deduction Rate increases." Id. "Thus, after Transamerica increased the Monthly Deduction Rates on the Loan Policies, [plaintiffs] advised the insured trusts that they would need to pay the increased monthly deductions." Id. In some instances, either the insured defaulted, causing plaintiffs to foreclose, or the insureds sold or surrendered their policies to plaintiffs "to avoid having to pay the increased monthly deductions." Id. "Finally, in other instances, the insureds agreed to accept a decreased net death benefit to offset the exorbitant monthly deductions required to keep their policies in force and avoid defaulting on their loans." Id.

Plaintiffs' argument appears to be that for an unspecified number of policies at issue in this case, plaintiffs provided premium finance loans to the original insureds (or trusts established for the insureds' benefit), taking a secured interest in the policies and the policies' death benefits as collateral. For these policies, the original insureds (or their trusts) apparently retained an ownership interest in their policies, such that if they

---

[3]     Plaintiffs explain that traditionally, "financial institutions have acquired life insurance policies on the secondary market" through a "life settlement," which "refers to the sale of a life insurance policy to a third party for a value greater than the policy's cash surrender value and less than the death benefit." Compl. ¶ 29. In a "life settlement," the seller "receives a cash payment, while the purchaser assumes all future premium payments and receives the death benefit upon the death of the insured." Id. By contrast, "[s]ome financial institutions also have provided premium finance loans to consumers to fund the premium payments in connection with their purchase of life insurance" and that "[t]hese premium finance loans are often secured by the life insurance policies[.]" Id. ¶ 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

ultimately repaid plaintiffs' premium finance loans, ownership in the policies would revert back to the original insureds. As an initial matter, other allegations in plaintiffs' complaint undermine plaintiffs' contention that the original insureds retain some ownership interest in the policies at issue in this case. For example, the complaint alleges that plaintiff "Primary MasterBareAF PTC Limited, as trustee of the CSSEL Guernsey Bare trust, is *the owner* and beneficiary of certain Policies at issue in this case." Compl. ¶ 23 (emphasis added). Similarly, plaintiffs' complaint alleges that plaintiff "Credit Suisse Lending Trust (USA) is the assignee of, and has full rights, title, and interest in, certain life insurance policies at issue in this case" and that plaintiff "Credit Suisse Lending Trust (USA) 5 is the assignee of, and has full rights, title, and interest in, a certain life insurance policy at issue in this case." Id. ¶¶ 24–25. Moreover, "the California Supreme Court has made clear that 'it is wise to proceed with caution in determining the scope and application' of the tort remedy in the context of a claim for breach of the implied covenant of good faith and fair dealing." Draeger, 2020 WL 2542060, at *4 (citing Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 92 (1995)) (internal alteration omitted). Even assuming *arguendo* that, for some unspecified number of the policies at issue in this case, some of the original insureds retain some indeterminate interest in the policies, plaintiffs fail to explain why extending the tort claim to plaintiffs—rather than these original insureds—is necessary to deter Transamerica's alleged misconduct.[4]

### ii.    Denial of Insurance Benefit

In Jonathan Neil, the California Supreme Court reasoned that public policy did not require extending the tort claim to an insured challenging an insurer's retroactive billing practices because "the billing dispute does not, by itself, deny the insured the benefits of the insurance policy—the security against losses and third party liability." 33 Cal. 4th at 940. Plaintiffs allege that Transamerica's MDR increases "deny [p]laintiffs the benefit of their policies by, among other things, causing the early termination of [p]laintiffs' policies." Compl. ¶ 93. That is because "[b]y increasing the Monthly Deduction Rate and

---

[4]    Aside from their argument regarding the original insureds' alleged continued pecuniary interest in the policies, plaintiffs repeat the same arguments regarding "market discipline" Jonathan Neil factor that the Court previously rejected in Brighton, EFG, and Wells Fargo. See Opp. at 17–18. Plaintiffs do not provide the Court a compelling basis to depart from its previous determinations that extending the tort claim to secondary market purchasers is unnecessary to further deter Transamerica's alleged misconduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                  **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

thereby shortening the period of coverage, Transamerica has denied policyholders, including [p]laintiffs, the full coverage they were entitled to based on proper Monthly Deduction Rates." Compl. ¶ 93. "Moreover, . . . [b]y unlawfully increasing the Monthly Deduction Rates, Transamerica intended to make the cost of the policies greater than the benefit so that policyholders like [p]laintiffs would let their policies lapse, and Transamerica would never have to pay the death benefit." Id. Plaintiffs' allegations are unavailing. The Court has previously rejected these arguments. See, e.g., EFG Bank, 2020 WL 1849493, at *4 ("That plaintiffs complain that Transamerica increased the MDRs in a way that violated other provisions of the policies does not mean that Transamerica shortened the period of coverage so as to deny plaintiffs an 'insurance benefit' due under plaintiffs' policies."); id. at *7 (rejecting argument that Transamerica's alleged MDR increases made investors' policies economically unviable so as to induce investors to "let their policies lapse" so as to implicate "insurance benefit").

In sum, plaintiffs "do not allege that benefits under their policies, such as the death benefit, have come due but that Transamerica has refused to pay plaintiffs these benefits."[5] Draeger, 2020 WL 2542060, at *5. For that reason, the "denial of benefits" factor articulated in Jonathan Neil does not require extending the tort claim to plaintiffs here.[6]

---

[5]    As discussed above, to the extent that plaintiffs' tortious breach claim is premised on allegations that Transamerica deprived plaintiffs "the benefit" of their Accumulation Values and the guaranteed minimum interest accrued on those accounts, the Court has already concluded that these allegations do not implicate the denial of an insurance benefit.

[6]    Relying on two cases opinions from the California Court of Appeal, plaintiffs also argue that "[b]y improperly raising its cost of insurance rates, Transamerica is trying to frustrate [p]laintiffs right to the benefits of their policies." Opp. at 14. Plaintiffs' reliance on these cases is misplaced. In these cases, which predate the California Supreme Court's opinion in Jonathan Neil, the California Court of Appeal determined that a claim for tortious breach of the implied covenant may lie against insurers where the insurers had not denied insurance benefits that had already come due. For example, in Notrica v. State Comp. Ins. Fund, an insured sued "his workers' compensation insurer . . . based on allegations relating to [the insurer's] reserve and claims handling policies and practices." 70 Cal. App. 4th 911, 918 (1999). Similarly, in Sec. Officers Serv. Inc. v. State Comp. Ins. Fund, an insured's employer brought suit against an insurer alleging that the insurer deliberately "delayed resolution of claims" which constituted "improprieties in claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### iii.    Need to Prosecute Insurer

In <u>Jonathan Neil</u>, the California Supreme Court noted that "the dispute does not require the insured to prosecute the insurer in order to enforce its rights, as in the case of bad faith claims and settlement practices." 33 Cal. 4th at 939. That is because the practice that the insured challenged was the retroactive overbilling of premiums, and the insurer was required to sue the insured in order to collect the retroactive overcharges. In other words, because the insurer could not immediately collect the challenged payment from its insureds, the insureds did not need to resort to litigation in order to preserve their rights and to maintain the status quo.

In other cases where investors have challenged Transamerica's MDR increases as a tortious breach of the implied covenant, "the Court has recognized that this factor favors extending the tort claim." <u>Wells Fargo</u>, 2020 WL 3440549, at *7; <u>accord</u> <u>EFG Bank</u>, 2020 WL 1849493, at *8 ("The Court agrees that 'the onus is on the insured either to sue or lose all coverage."). The Court has likewise concluded, "[h]owever, [that] no one of the <u>Jonathan Neil</u> factors is dispositive, and the fact that plaintiffs may have to pursue affirmative litigation against Transamerica to challenge Transamerica's MDR increases does not, itself, require extending the tort claim here." <u>Draeger</u>, 2020 WL 2542060, at *6.

### iv.    Lack of Adequate Alternative Remedies

Plaintiffs argue that "without a tortious breach claim, [p]laintiffs cannot be made whole." Opp. at 18. According to plaintiffs, then, the "lack of adequate alternative remedies" factor articulated in <u>Jonathan Neil</u> warrants extending the tort claim here.

In <u>Jonathan Neil</u>, the California Supreme Court explained that extending the tort remedy was unnecessary because, with respect to the insurer's practice of retroactively billing premiums, the insureds "had available various administrative, contractual, and tort remedies." 33 Cal. 4th at 941. The California Supreme Court noted that "[i]f the premium charge is wholly unjustified, the insured may, after successfully defending the action, sue for malicious prosecution." <u>Id.</u> at 939. Alternatively, "[i]f the debt is reported to third parties, to the debtor's detriment, a defamation action may lie." <u>Id.</u> Moreover, "[t]he

---

handling." 17 Cal. App. 4th 887, 892, 898 (1993). By contrast, plaintiffs here do not allege that Transamerica engaged in the mishandling of claims that have already become due.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

untruthful, bad faith creditor may also be liable for intentional interference with prospective economic advantage." Jonathan Neil, 33 Cal. 4th at 939.

In other cases challenging Transamerica's MDR increases, the Court has determined that policyholders that acquired their policies on the secondary market have viable remedies other than a claim for tortious breach of the implied covenant. For example, the Court has explained that policyholders could—at the pleading stage—pursue claims for breach of contract and breach of the implied covenant sounding in contract. See, e.g., Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 5784925, at *6 (C.D. Cal. Nov. 4, 2019) ("the Court has already determined that plaintiffs have stated claims for breach of contract and breach of the implied covenant sounding in contract—therefore, this is not a case where plaintiffs have no other 'available various administrative contractual, and tort remedies.'"); Wells Fargo, 2020 WL 833518, at *11 (declining to extend tort claim to investors challenging Transamerica's MDR increases because "plaintiffs have remedies available other than a claim for tortious breach of the implied covenant. Indeed, plaintiffs have asserted claims for breach of contract and breach of the implied covenant sounding in contract, and, at this juncture, Transamerica has not sought dismissal of those claims."). Here, plaintiffs assert claims for breach of contract and breach of the implied covenant sounding in contract. And, aside from seeking partial dismissal of plaintiffs' breach of contract claim as discussed above, Transamerica has not otherwise sought dismissal of plaintiffs' breach of contract and contractual breach of the implied covenant claims. In addition, plaintiffs assert a claim for conversion, and Transamerica only seeks to partially dismiss plaintiffs' conversion claim as to some, but not all, of the policies at issue in this case.[7] Cf. Wells Fargo, 2020 WL 3440549, at *7 (finding that adequate alternative remedies factor articulated in Jonathan Neil weighed against extending tort claim to investors where investors "assert a claim for conversion and, at this juncture, Transamerica does not seek dismissal of plaintiffs' conversion claim."). That plaintiffs prefer the tort remedies, such as Brandt fees, which may accompany a claim for tortious breach of the implied covenant, as opposed to the remedies

---

[7]     Plaintiffs Primary MasterBareAF PTC Limited owns 17 of the policies at issue in this case, while plaintiffs Credit Suisse Lending Trust (USA) and Credit Suisse Lending Trust (USA) 5 are the assignees of the remaining 13 policies. Compl. ¶¶ 27–28. As discussed more fully below, Transamerica only moves to dismiss plaintiffs' conversion claim as to those policies owned by plaintiffs Credit Suisse Lending Trust (USA) and Credit Suisse Lending Trust (USA) 5. See Mot. at 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

attendant to plaintiffs' other claims, "does not, without more, require the Court to find that plaintiffs have a cognizable tort claim where the relevant Jonathan Neil factors compel a different result." [8] Draeger, 2020 WL 2542060, at *6.

### c. Miscellaneous Arguments

Plaintiffs make additional, miscellaneous arguments in opposition to Transamerica's motion to dismiss. For example, plaintiffs argue that: (1) denying plaintiffs the tort claim would harm individual insureds; (2) the Court's distinction between institutional investors, such as plaintiffs, and the class in Thompson "create[s] an irreconcilable schism"; and (3) plaintiffs "should be able to assert the tortious breach claim here, just as the class was permitted to assert it in Feller and is being permitted to assert it in Thompson." Opp. at 10–13. The Court has previously rejected each of these arguments. See, e.g., EFG Bank, 2020 WL 636907, at *10–11 (rejecting arguments that extending the tort claim to secondary market purchasers is necessary to: (1) deter insurer misconduct that would affect original insureds; and (2) protect against "an unworkable standard" and "onerous pleading requirements"); Wells Fargo, 2020 WL 3440549, at *8 n.5 (rejecting argument that extending the tort claim to investors was necessary where investors argued "that had they not opted out of [Feller], they would have been afforded the same treatment as the class plaintiffs in Feller" and explaining that "had Feller proceeded to trial, Transamerica would have retained—against any class members whom purchased Transamerica's policies on the secondary market—individual defenses that purchasers on the secondary market are not entitled to the tort claim).

---

[8]     In Brandt v. Superior Court, the California Supreme Court determined that "[w]hen an insurer tortuously withholds benefits, . . . attorney's fees, reasonably incurred to compel payment of the befits, [are] recoverable as an element of the damages resulting from such tortious conduct[.]" 37 Cal. 3d 813, 815 (1985). Plaintiffs urge that "[o]nly through the remedy of attorneys' fees for bad faith can a policyholder be made whole for the insurer's bad faith conduct and will the insurer be adequately deterred from future bad faith conduct." Opp. at 19. As a preliminary matter, "questions about the appropriateness of specific remedies are premature at this stage of the litigation." James ex rel. James Ambrose Johnson, Jr.1999 Tr. v. UMG Recordings, No. 11-cv-1613-SI, 2011 WL 5192476, at *5 (N.D. Cal. Nov. 1, 2011). Moreover, because plaintiffs fail to state a claim for breach of the implied covenant sounding in tort, the Court need not decide whether plaintiffs would be entitled to Brandt fees assuming *arguendo* their tort claim was viable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Plaintiffs do not provide the Court with a compelling basis to depart from its earlier determinations that these arguments do not require the Court to find that plaintiffs have stated a claim for breach of the implied covenant sounding in tort. The Court therefore **DISMISSES** plaintiffs' claim for tortious breach of the implied covenant **without prejudice**.

### 3. Conversion Claim

Plaintiffs also assert a claim for conversion against Transamerica. Compl. ¶¶ 98–105. The gravamen of plaintiffs' conversion claim is that: (1) plaintiffs had a "property interest" in the funds in their Accumulation Values; (2) plaintiffs had "the right to immediately possess the funds" in their Accumulation Values; and (3) Transamerica therefore engaged in conversion by deducting funds from plaintiffs' Accumulation Values in a manner that exceeded the scope of permission that plaintiffs granted Transamerica pursuant to the express terms of plaintiffs' policies, which establish the criterion that Transamerica may consider in raising its MDRs. Id.

Transamerica moves to dismiss plaintiffs' conversion claim as to those policies owned by plaintiffs Credit Suisse Lending Trust (USA) and Credit Suisse Lending Trust (USA) 5 ("the Lending Trust plaintiffs"). See Mot. at 20. According to Transamerica, the Lending Trust plaintiffs "are Delaware statutory trusts," while Transamerica "is a citizen of Iowa, with its principal place of business in Cedar Rapids, Iowa." Id. Transamerica therefore argues that "with the Lending Trust [p]laintiffs alleging conversion against an Iowa citizen causing harm in Delaware, California's choice-of-law principles require the application of Delaware law," and that "[b]ecause the Lending Trust [p]laintiffs fail to state a conversion claim under Delaware law, their conversion claim should be dismissed with prejudice."[9] Id. In response, plaintiffs contend that "Delaware has no legitimate interest in applying its law to [p]laintiffs' conversion claim, and certainly not a stronger interest

---

[9]     The Court has previously concluded that, at the pleading stage, similar allegations are sufficient to state a claim for conversion against Transamerica pursuant to California law. See, e.g., Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2020 WL 2036652, at *6 (C.D. Cal. Jan. 23, 2020). Transamerica does not appear to challenge either that plaintiff Primary MasterBareAF PTC Limited's conversion claim is subject to California law or that Primary MasterBare AF PTC Limited fails to state a claim for conversion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

than California, the forum state." Opp. at 19. Alternatively, plaintiffs argue that the Court should apply the law of Iowa—Transamerica's home-state. Id. at 21.

"In a diversity case, federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules." Downing v. Abercrombie & Fitch, 265 F.3d 994, 1005 (9th Cir. 2001) (internal citation and quotation marks omitted). "California applies a three-step 'governmental interest' analysis to choice-of-law questions." Abogados v. AT&T, Inc., 223 F.3d 932, 934 (9th Cir. 2000) (internal citations omitted). "First, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction." Id. (internal citation omitted). "Second, if the laws do differ, the court must determine whether a 'true conflict' exists in that each of the relevant jurisdictions has an interest in having its law applied." Id. "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." McGhee v. Arabian Am. Oil Co., 871 F.2d 1412, 1422 (9th Cir. 1989). "On the other hand, if more than one jurisdiction has a legitimate interest, the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions." Abogados, 223 F.3d at 934. "At this stage, the court seeks to identify and apply the law of the state whose interest would be more impaired if its laws were not applied." Id.

The Court next applies California's three-step, governmental interest analysis to the parties' choice of law dispute.

      a.    **Substantive Law Regarding Conversion in California, Iowa, and Delaware**

As an initial matter, the parties dispute what jurisdictions' laws are relevant for the purposes of the first step of the Court's choice of law inquiry. Transamerica argues that the relevant jurisdictions are California, the forum-state, and Delaware, the Lending Trust plaintiffs' home-state. According to plaintiffs, however, the relevant jurisdictions are Iowa—Transamerica's home state—as well as California and Delaware.

The Court has previously concluded that allegations similar to those which form the basis for the Lending Trust plaintiffs' conversion claim are, at the pleading stage, sufficient to state a claim for conversion pursuant to California law. See, e.g., Brighton, 2020 WL 2036652, at *6. Courts have concluded that California and Iowa law are similar regarding the tort of conversion. See, e.g., Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

18 F. Supp. 3d 966, 982 (N.D. Iowa 2014) ("California law, like Iowa law, frames the first element of a 'conversion' claim as 'the plaintiff's ownership or right to possession of personal property'") (internal citation and emphasis omitted). Similarly, both California and Iowa law permit money to serve as the "property" which forms the basis for a conversion claim. See Voris v. Lampert, 7 Cal. 5th 1141, 1151 (2019) (noting that California law permits money to "be the subject of an action for conversion" so long as "a specific sum capable of identification is involved."); cf. Ally Fin., Inc. v. Gretter, No. 4:15-CV-00051-SMR-HCA, 2015 WL 13545196, at *6 (S.D. Iowa Oct. 8, 2015) (concluding that Iowa law "suggest[s] [monetary] proceeds may be the subject of a conversion action, so long as the proceeds [a]re clearly identifiable.").

By contrast, plaintiffs "do not dispute that both California and Iowa conversion laws differ from Delaware's conversion law" because "[u]nlike in California and Iowa, under Delaware law, generally, an action in conversion will not lie to enforce a claim for the payment of money." Opp. at 21 (internal citation and alteration omitted). Accordingly, because the laws of California, Iowa, and Delaware materially differ as to the conversion tort, the Court proceeds to the second step of California's governmental analysis inquiry to determine whether a "true conflict" exists.

### b.    Whether a True Conflict Exists

The parties likewise dispute whether a "true conflict" exists as between the interests of California, Iowa, and Delaware. Transamerica argues that "California has no interest in regulating the Policies," and "[s]ince the Lending Trust [p]laintiffs are Delaware trusts and the conduct complained of and [the] alleged injury did not occur in California, Delaware has the greater interest that would be impaired if California law applies." Mot. at 23. According to plaintiffs, however, "there is no 'true conflict' because Delaware has no interest in having its law applied." Opp. at 22. Plaintiffs instead aver that a "false conflict" exists because "Delaware has no legitimate interest because it is Transamerica—an entity with no claimed ties to Delaware whatsoever—that seeks the protection of Delaware law." Id. Thus, plaintiffs urge that although the Lending Trust plaintiffs "are Delaware trusts, . . . Delaware has no interest in limiting the remedies for tortious conduct against its citizens—especially remedies that [Transamerica's] own home state allows." Id. at 22–23.

In Hamra, the Court addressed a similar choice of law dispute between Transamerica and a policyholder challenging Transamerica's MDR increases as a tortious breach of the implied covenant of good faith and fair dealing. See 2019 WL 468803, at *10. In that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

case, the policyholder and Transamerica "dispute[d] whether Illinois, Iowa, or California law governs [the policyholder's] tortious breach claim." Id. With respect to California's interest, the Court noted that "[a]lthough 'California has demonstrated an interest in regulating the practices of insurers within this state, as well as in affording to redress to California residents damages by unfair practices of insurers,' California's interests are not legitimately implicated here because plaintiff lives in Illinois, the insureds live in Florida, and Transamerica's decision to increase the MDRs occurred at least a decade after it moved its headquarters from California to Iowa." Id. (citing Zimmerman v. Allstate Ins. Co., 179 Cal. App. 3d 840, 846 (1986)). The Court therefore concluded that "because the ultimate decision to increase the MDRs occurred in Iowa and [the policyholder's] injury occurred in Illinois," California's "interest would not be significantly impaired if it were not able to extend its law on tortious breach to a case involving non-resident parties and conduct that largely occurred out-of-state." Hamra, 2019 WL 468803, at *10.

Here, the Court notes that the Lending Trust plaintiffs are based in Delaware. See Compl. ¶¶ 24–25. And while some of the Lending Trust plaintiffs' policies were originally issued to policyholders in California, the Lending Trust plaintiffs challenge Transamerica's MDR increases which Transamerica instituted in 2015. See Compl. ¶¶ 15, 28. By that time, however, Transamerica had moved its home office and principal place of business to Iowa. Opp. at 10. Accordingly, with respect to the Lending Trust plaintiffs' conversion claim, California appears to have a minimal, if any, interest in regulating the conduct of an Iowa insurer based on conduct that occurred in Iowa and which affected the policies held by plaintiffs located in Delaware. See Van Winkle v. Allstate Ins. Co., 290 F. Supp. 2d 1158, 1164 (C.D. Cal. 2003) ("the interests of California are at least reduced when a nonresident seeks the benefits of its laws."); accord McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 99 (2010) ("California's interest in applying its laws providing a remedy to, or facilitating recovery by, a potential plaintiff in a case in which the defendant's allegedly tortious conduct occurred in another state is less than its interest when the defendant's conduct occurred in California.").

Transamerica argues that "Delaware has a substantial interest in regulating tortious conduct against its citizens." Mot. at 25. According to Transamerica, Delaware's "interest in applying its law to its corporate citizens and residents who allegedly suffer injury there" overrides any interest that Iowa has "in a common law conversion claim by Delaware plaintiffs." Reply at 17. Plaintiffs aver that "Iowa too has a strong interest in applying its law" because "Iowa has a 'clear' interest in regulating the manner in which Iowa insurance companies do business." Opp. at 23–24. The Court notes that neither the Lending Trust

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

plaintiffs, which are based in Delaware, nor Transamerica, which is based in Iowa, argue that their own respective home-states have the superior interest with respect to the body of law that governs the Lending Trust plaintiffs' conversion claim. Instead, the Lending Trust plaintiffs and Transamerica each appear to argue that the other's home-state has a greater interest in having the Court apply that state's law.

"Delaware has a strong interest in adjudicating disputes among its corporate citizens." Intellectual Ventures I LLC v. Altera Corp., 842 F. Supp. 2d 744, 760 (D. Del. 2012). However, "Delaware's interest in cases involving only one Delaware entity is not necessarily as strong as it would be in litigation solely among Delaware corporations." Advanced Reimbursement Mgmt., LLC v. Plaisance, No. 17-cv-667-MN, 2019 WL 2502931, at *4 (D. Del. June 17, 2019). Here, the Lending Trust plaintiffs are Delaware trusts, while Transamerica is an Iowa corporation. Delaware, then, appears to have a legitimate interest in having the Court apply its law of conversion, although Delaware's interest is not as strong as it would be were both Transamerica and the Lending Trust plaintiffs based in Delaware.

On the other hand, the Court recognizes that Transamerica is an Iowa corporation that maintains its principal place of business in Iowa. And, "Iowa's interest in regulating the manner in which Iowa insurance companies do business is clear." Cunningham v. PFL Life Ins. Co., 42 F. Supp. 2d 872, 883 (N.D. Iowa 1999). Because both Delaware and Iowa each appear to have some interest in having the Court apply their respective law regarding conversion, the Court proceeds to the third step of California's governmental analysis.

### c. Comparative Impairment

Pursuant to California's three-step choice of law inquiry, "[o]nce the trial court determines that the laws are materially different and that each state has an interest in having its own law applied, thus reflecting a true conflict, the court must take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." In re Packaged Seafood Prod. Antitrust Litig., 332 F.R.D. 308, 339 (S.D. Cal. 2019) (internal quotation omitted). "Under the comparative impairment analysis," the Court "must carefully evaluate and compare the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." McCann, 48 Cal. 4th at 96–97 (internal citation and alterations omitted). "In conducting this evaluation," the Court "does not 'weigh' the conflicting governmental interests in the sense

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
|----------|-------------------------|------|---------------|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

of determining which conflicting law manifested the 'better' or the 'worthier' social policy on the specific issue." McCann, 48 Cal. 4th at 97. Instead, the Court must "decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." Id. The parties' briefs do not materially address which jurisdiction's interests would be "more impaired" if its laws were not applied.

At bottom, the parties' choice of law dispute presents the following conflicting interests: (1) Delaware's interest in having its own law govern the claims of its home-state plaintiffs against foreign corporations, where Delaware's conversion law presumably bars its own plaintiffs' claim but the law of the foreign corporation's home-state does not; and (2) Iowa's respective interest in regulating Iowa insurers, where those insurers engage in alleged misconduct that harms foreign plaintiffs, and Iowa's conversion law may provide the foreign plaintiffs with a remedy that the law of the foreign plaintiffs' own home-state does not. On balance, the Court concludes that Delaware's interest in having its own law apply to its residents in their claims against a foreign insurer would *not* be "more impaired" were the Court to apply the law of Iowa, than were the Court to decline to apply the law of Iowa to foreign residents' claims against an Iowa insurer. Put differently, Transamerica provides no authority for the proposition that Delaware's interests in having its own law apply to its residents' claims against a foreign corporation—to the benefit of the foreign corporation and to the detriment of Delaware's own residents—would be "more impaired" were the Court to allow Delaware residents to pursue claims against the foreign corporation even though Delaware's own law presumably bars these same claims. Cf. Jackson v. Travelers Ins. Co., 26 F. Supp. 2d 1153, 1161 (S.D. Iowa 1998) (finding that choice of law principles required application of Iowa tort law, rather than Nebraska law, to Nebraska resident's claim against Iowa insurer where Iowa law allowed recovery but Nebraska law did not because, *inter alia*, "Iowa has a legitimate concern that without application of its laws, there will not be a sufficient deterrent for the insurance industry to refrain from acting in bad faith[.]").

Accordingly, the Court concludes that Iowa law, rather than Delaware law, applies to the Lending Trust plaintiffs' conversion claims. Because Transamerica does not move to dismiss the Lending Trust plaintiffs' conversion claim on the grounds that the Lending Trust plaintiffs fail to state a claim pursuant to Iowa law, the Court **DENIES** Transamerica's motion to dismiss the Lending Trust plaintiffs' conversion claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:20-cv-02516-CAS(GJSx) | Date | July 13, 2020 |
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

## V.   CONCLUSION

For the foregoing reasons, the Court order as follows:

1.      The Court **DENIES** Transamerica's motion to dismiss for lack of personal jurisdiction.

2.      The Court **GRANTS in part** and **DENIES in part** Transamerica's motion to dismiss for failure to state a claim.  Specifically, the Court **DISMISSES without prejudice** plaintiffs' breach of contract claim, as alleged in ¶ 77(b) of the complaint, as to plaintiffs' twenty-seven policies that include "interest" as an enumerated cost factor.   The Court also **DISMISSES without prejudice** plaintiffs' claim for tortious breach of the implied covenant of good faith and dealing.  The Court **DENIES** Transamerica's motion to dismiss in all other respects.

3.      Plaintiffs shall file any first amended complaint within **thirty (30) days**.

IT IS SO ORDERED.

|  | 00 | : | 18 |
| Initials of Preparer | | CMJ | |