UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:20-CV-02516-CAS(GJSx) | | Date | October 19, 2020 |
|---|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Khai LeQuang | Hutson Smelley |

**Proceedings:** DEFENDANT TRANSAMERICA LIFE INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. 41, filed on August 26, 2020)

## I. INTRODUCTION

On March 16, 2020, plaintiffs brought the instant action against defendant Transamerica Life Insurance Company ("Transamerica") based upon Transamerica's alleged wrongful increases of the monthly costs of 30 universal life insurance policies ("Policies"). Dkt. 1 ("Compl."). On May 19, 2020, Transamerica filed a motion to dismiss plaintiffs' complaint, Dkt. 26-1, which the Court granted in part and denied in part on July 13, 2020, Dkt. 38 ("July 13, 2020 Ord.").[1]

Plaintiffs filed a first amended complaint on August 12, 2020. Dkt. 40 ("FAC"). Defendant filed the instant motion to dismiss plaintiffs' FAC on August 26, 2020. Dkt. 41 ("MTD"). Plaintiffs filed an opposition on September 28, 2020, Dkt. 44 ("Opp."), and Transamerica filed a reply on October 5, 2020, Dkt. 45 ("Reply"). The Court held a hearing on October 19, 2020.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

---

[1] The Court previously set out the factual background of this case in its July 13, 2020 order. The Court therefore incorporates by reference the facts laid out in that order, and only provides those facts necessary to resolve Transamerica's instant motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02516-CAS(GJSx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

## II.   BACKGROUND

Plaintiffs are three corporate entities: Primary MasterBareAF PTC Limited ("MasterBare"), Credit Suisse Lending Trust (USA), and Credit Suisse Lending Trust (USA) 5 (collectively, "plaintiffs").

MasterBare, which is acting on behalf of and as trustee of the CSSEL Guernsey Bare Trust, is the owner and beneficiary of 17 of the Policies, issued between 1993 and 2006 (the "Guernsey Policies"). FAC ¶ 27; see FAC Exh. 2 ("Guernsey Doe Policy").

Credit Suisse Lending Trust (USA) and Credit Suisse Lending Trust (USA) 5 (together, "Lending Trust plaintiffs") allege claims arising from 13 of the Policies (the "Lending Trust Policies"). FAC ¶ 28; see FAC Exh. 4 ("Lending Trust Doe Policy"). However, Lending Trust plaintiffs do not own the Lending Trust Policies; rather, they bring suit in their capacity as collateral assignees of the claims at issue. FAC ¶ 28. Between 2005 and 2006, several life insurance trusts ("insured trusts") took out loans to finance their purchase of the Lending Trust Policies, which were issued in California or Minnesota. Id. These loans are called "premium finance loans," and the agreements establishing the terms of the loans are called "financing agreements."[2] Id. at ¶ 39. Under the terms of the financing agreements, the insured trusts remain the owners of the Lending Trust Policies, and are entitled to a portion of the net death benefit when these policies mature. Id. at ¶ 40. These loans remain outstanding. Id. at ¶ 28. In order to secure the premium finance loans, the insured trusts collaterally assigned the Lending Trust Policies to the lenders, who are the predecessors in interest to Lending Trust plaintiffs. Id.; see FAC Exh. 5 ("Collateral Assignment" or "CA"). (Neither the insured trusts nor the initial lenders are party to this suit.) Since their execution, the collateral assignments have been assigned, in full, to Lending Trust plaintiffs. FAC ¶ 39. Relevant here, Lending Trust plaintiffs have been assigned "all of [the insured trusts'] claims, options, privileges, rights, title and interest in, to and under the [Lending Trust Policies]." Id. at ¶ 28; CA at 1. Furthermore, the collateral assignments confer a limited power of attorney to the assignee. CA at 4.

Pursuant to the terms of all 30 of the Policies, policy holders deposit premiums into an account for each policy. Each month, Transamerica withdraws a monthly deduction from each account and deposits a separate amount of interest. Interest accrues on the account's balance based upon minimum rates and average annual rates guaranteed by each

---

[2] No sample financing agreement has been entered into the record.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-02516-CAS(GJSx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

policy.  FAC ¶ 8.  The Doe policies, for example, accrue a minimum interest rate of 4%. Id. at ¶ 43.  The amount in a policy's account is known as the "Accumulation Value." Id. at ¶ 8.  Universal life insurance policies allow policyholders to alter the amount and frequency of their premium payments. Id. at ¶ 11.  The Policies remain in force as long as the Accumulation Value each month is sufficient to cover Transamerica's monthly deduction.  Id. at ¶ 8.  If the Accumulation Value is insufficient to cover a monthly deduction, the policy enters a grace period during which the policyholder may pay additional premiums to prevent lapse. Id. at ¶ 12.  At the end of the grace period, if the Accumulation Value remains too low, the policy will lapse, that is, terminate. Id. at ¶ 43.

The monthly deduction is equal to (1) the Monthly Deduction Rate ("MDR") multiplied by the difference between the Accumulation Value and the death benefit then multiplied by .001;[3] plus (2) a monthly deduction for any policy riders; plus (3) a set policy fee; plus (4) a monthly expense charge per thousand rate multiplied by .001, times the face value of the policy. Id. at ¶ 41.  Plaintiffs allege that the first element above, relating to the MDR, is the largest and most significant charge. Id. at ¶ 42.  Plaintiffs further allege that the MDRs under the Policies "are based initially on certain characteristics of the insured, including her or his gender, age, and risk class" and increase as the insured ages. Id. at ¶ 44.  The Policies state that Transamerica "will determine the Monthly Deduction Rate for each policy month at the beginning of that policy month." Id. at ¶ 45.

The Policies enumerate certain factors that may be considered in increasing the MDR.  Relevant here, Transamerica may only base changes upon its expectations as to "future cost factors," and "not [to] distribute past surplus or *recover past losses* … ." Id. at ¶ 46–47 (emphasis added).  However, the Policies use slightly different language in enumerating the cost factors Transamerica may consider.  For instance, 27 of the Policies provide: "Such cost factors may include, but are not limited to: mortality; expenses; *interest*; persistency; and any applicable federal, state and local taxes." Id. at ¶ 45 (emphasis added).  Finally, the Policies also set maximum MDRs.  Guernsey Doe Policy at 59.

Plaintiffs allege that in June 2015, Transamerica began raising the MDRs in a manner that violated the Policies' terms. FAC ¶ 48.  According to plaintiffs, "[b]y raising

---

[3] Although the Accumulation Value will be paid out as part of the death benefit, policyholders do not pay cost of insurance on the Accumulation Value because it is the savings component of the Policies and not the "insurance." FAC ¶ 42.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 2:20-CV-02516-CAS(GJSx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the Monthly Deduction Rates on the Policies, in some cases as much as 74%, without a proper basis, Transamerica has breached the express and implied terms of the Policies." Id. at ¶ 4. Plaintiffs further contend that the purpose of these increases is "to force [p]laintiffs and other policyholders either to (a) pay exorbitant premiums that Transamerica knows would no longer justify the ultimate death benefits or (b) lapse or surrender their policies and forfeit the premiums they have paid to date, thereby depriving policyholders of the benefits of their policies." Id. at ¶ 18.

With regard to the Lending Trust Policies, pursuant to the financing agreements, the insured trusts—not Lending Trust plaintiffs themselves—remain responsible for paying increases in the monthly deduction. Id. at ¶¶ 39–40. As such, plaintiffs aver that, when Transamerica implemented the MDR increases at issue, the insured trusts were forced to: (1) cover the cost of the increased monthly deductions, thereby retaining ownership of the policies as well as their allotted portion of the death benefit once the policies reached maturity; (2) renegotiate the financing agreements with Lending Trust plaintiffs to either (a) accept a decreased portion of the net death benefit to offset Lending Trust plaintiffs' covering the increase in the monthly premium, or (b) borrow more from Lending Trust plaintiffs to cover the increased monthly premiums; (3) sell or surrender their policies to Lending Trust plaintiffs to avoid foreclosure on the premium finance loans; or (4) default on the premium finance loans.[4] Id. To date, none of the insured trusts have defaulted on their premium finance loans, although some have renegotiated the financing agreements. Id. at ¶ 40.

Plaintiffs' FAC asserts the following claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing sounding in contract; (3) breach of the implied covenant of good faith and fair dealing sounding in tort; (4) conversion; and (5) declaratory relief. Id. at ¶¶ 76–110. Transamerica now moves to dismiss, for failure to state a claim, plaintiffs' breach of contract claim, in part, and claim for tortious bad faith. MTD at 1. Transamerica also moves to dismiss Lending Trust plaintiffs' claims due to lack of subject-matter jurisdiction. Id.

---

[4] The collateral assignments prohibit the insured trusts from lapsing and surrendering the policies to Transamerica. CA at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02516-CAS(GJSx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

## III.    LEGAL STANDARDS

### A. Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under Rule 12(b)(6), a district court must dismiss a claim if "there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citations omitted).

In considering a Rule 12(b)(6) motion, a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1988). A court must read the complaint in the light most favorable to the non-movant. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, the court cannot consider material outside of the complaint, such as facts presented in briefs, affidavits, or discovery materials. In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). However, a court may consider exhibits submitted with or alleged in the complaint and matters that may be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-02516-CAS(GJSx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

### B. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) tests whether a court has subject-matter jurisdiction to hear a claim.  "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack on subject matter jurisdiction, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  Id.  In such cases, "[w]hether subject matter jurisdiction exists ... does not depend on resolution of a factual dispute, but rather on the allegations in [the plaintiff's] complaint."  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  A district court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014).

As a general rule, leave to amend a complaint which has been dismissed should be granted freely.  Fed. R. Civ. P. 15(a).  However, the court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.  DISCUSSION

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

#### 1. Breach of Contract

Transamerica first moves to dismiss plaintiffs' breach of contract claim alleged in paragraph 78(b) of the FAC as it pertains to those policies that included "interest" as an enumerated cost factor upon which Transamerica could adjust its MDRs.  MTD at 1. Transamerica argues that the Court, in its July 13, 2020 order, already dismissed this claim pursuant to Rule 12(b)(6) as it pertains to these policies, and that plaintiffs make no new allegations to support the claim.  Id. at 4, 10; see July 13, 2020 Ord. at 11–12.  Both

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-02516-CAS(GJSx) | Date | October 19, 2020 |
|----------|--------------------------|------|------------------|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

paragraph 77(b) of the complaint and paragraph 78(b) of the FAC allege that Transamerica breached the Policies by "increasing the Monthly Deduction Rate in an attempt to circumvent the guaranteed minimum interest rate." FAC ¶ 78(b); Compl. ¶ 77(b). Indeed, plaintiffs acknowledge that they have not amended their allegations with respect to this claim, but rather re-assert the claim only to preserve it for appeal. Opp. at 23–24.

Accordingly, the Court again **DISMISSES** the breach of contract claim asserted in paragraph 78(b) of plaintiffs' FAC as applied to the 27 policies that include "interest" as an enumerated cost factor on the same grounds as laid out in its July 13, 2020 order. See July 13, 2020 Ord. at 11–12. Because plaintiffs had the opportunity to amend their complaint to allege facts sufficient to support this claim, the Court dismisses the claim as described above **with prejudice**.

### 2. Tortious Breach of Implied Covenant of Good Faith and Fair Dealing

As in their complaint, plaintiffs assert, with respect to the policies that Transamerica issued in California and pursuant to California law, a claim for breach of the implied covenant of good faith and fair dealing sounding in tort. See FAC ¶¶ 88–98; Compl. ¶¶ 87–97. Transamerica argues that the Court already dismissed plaintiffs' claim for tortious bad faith in its July 13, 2020 order, and that plaintiffs make no new allegations to support the claim. MTD at 6, 10–11.

Plaintiffs acknowledge that, because MasterBare "did not purchase any of the 17 Guernsey Policies directly from Transamerica," but rather on the secondary market, a bad faith claim sounding in tort is unavailable to MasterBare. Opp. at 17; see Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 6315541 (C.D. Cal. Aug. 28, 2019); Wells Fargo Bank, Nat'l Ass'n v. Transamerica Life Ins. Co., No. 2:19-cv-06478-CAS-GJS, 2020 WL 833518 (C.D. Cal. Feb. 19, 2020); EFG Bank AG v. Transamerica Life Ins. Co., No. 2:16-cv-08104-CAS-GJS, 2020 WL 1849493 (C.D. Cal. Apr. 13, 2020). But plaintiffs contend they may bring tortious bad faith claims with regard to the 13 Lending Trust Policies because "the initial policyholders—the Insured Trusts—are still the owners" of those policies. Opp. at 17; FAC ¶ 39.

This Court, in its July 13, 2020 order, already rejected plaintiffs' argument regarding the Lending Trust Policies. July 13, 2020 Ord. at 15–23 (applying factors set forth in Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal. 4th 917 (2004)). Because plaintiffs advance no new arguments nor facts in their opposition or FAC, the Court sees no reason to disturb its prior ruling. Compare Compl. ¶ 39, FAC ¶ 39. Accordingly, the Court **DISMISSES**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-02516-CAS(GJSx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

with prejudice plaintiffs' claim for tortious breach of the implied covenant of good faith and fair dealing for failure to state a claim.

### B. Motion to Dismiss Pursuant to Rule 12(b)(1)

#### 1. Assignment of Claims at Issue

Transamerica moves to dismiss Lending Trust plaintiffs' claims for lack of standing pursuant to Rule 12(b)(1). MTD at 7–9, 17–20. First, Transamerica argues that the claims here have not been assigned to Lending Trust plaintiffs. "Assignees of a claim … have long been permitted to bring suit." Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 275 (2008). Under Minnesota law, which governs the collateral assignments, see CA at 5, assignments do not require specific language to be effectual, and should be interpreted in accordance with the parties' intent. Minnesota Mut. Life Ins. Co. v. Anderson, 504 N.W.2d 284, 286 (Minn. Ct. App. 1993) ("Under Minnesota law no particular form of words is required for an assignment, but the assignor must manifest an intent to transfer and must not retain any control or any power of revocation."). Furthermore, "when a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 271 (Minn. 2004).

Here, Transamerica argues that Lending Trust plaintiffs do not own the Lending Trust Policies, and that the claims at issue here had not arisen when the collateral assignments were entered into and thus have not been assigned to Lending Trust plaintiffs. MTD at 18–19. According to Transamerica, assignments of future claims must be explicit; the plain meaning of the collateral assignments assigns only claims existing at the time of the assignment; and if the parties had intended to assign future claims, they could have done so. MTD at 19; Reply at 5–6. Plaintiffs respond that the plain meaning of the collateral assignments assigns all claims—both existing at the time of execution and after-arising—and that the Court should not disrupt the parties' clear intent to this effect. Opp. 9–10.

The Court concludes the language of the assignments is sufficiently broad to assign the claims at issue. The trustees of the insured trusts "assign[ed] … all of Owner's claims, options, privileges, rights, title and interest in, to and under" the policies. CA at 1 (emphasis added). Additionally, the collateral assignments include limited powers of attorney, which further supports the argument that the parties to the assignments intended to assign future claims. See id. at 4. Because the collateral assignments are susceptible to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:20-CV-02516-CAS(GJSx) | Date | October 19, 2020 |
|----------|--------------------------|------|------------------|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the interpretation that the parties intended to assign the claims at issue here, and because the question of parties' intent is a question of fact unamenable to dismissal at the pleading stage, the Court cannot find that the assignments do not transfer the claims here to Lending Trust plaintiffs. See Leite, 749 F.3d at 1121 (when ruling on Rule 12(b)(1) motion, courts draw all reasonable inferences in favor of plaintiff). On this ground alone, plaintiffs defeat Transamerica's Rule 12(b)(1) motion; nevertheless, the Court proceeds to Transamerica's second argument.

2. Article III Standing Independent of Assignment

Second, Transamerica argues that Lending Trust plaintiffs have no standing under Article III independent of the collateral assignments because they have suffered no injury in fact. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (citing Simmonds v. Credit Suisse Sec. (USA) LLC, 638 F.3d 1072, 1087 n.6 (9th Cir. 2011)). To meet the Article III standing requirement, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quotations and citations omitted). A security interest is a legally protected interest that is concrete and particularized. Richter v. CC-Palo Alto, Inc., No. 5:14-CV-00750-EJD, 2014 WL 6687238, at *5 (N.D. Cal. Nov. 25, 2014). Finally, "a concrete risk of harm to the plaintiffs" and "a credible threat of harm" can be sufficient for injury in fact. Harris v. Bd. of Supervisors, L.A. Cnty., 366 F.3d 754, 761 (9th Cir. 2004) (quotations and citations omitted).

Here, Transamerica argues that the insured trusts—not Lending Trust plaintiffs—are required to pay the increases in monthly deductions caused by the MDR increases at issue. MTD at 18. Furthermore, none of the insured trusts have defaulted on their premium finance loans, and thus any harm to Lending Trust plaintiffs as a result of default is speculative. Reply at 7–8; see FAC ¶ 40. Plaintiffs respond that Lending Trust plaintiffs have suffered injury in fact separate and apart from the insured trusts because (1) all but one insured trust borrowed additional funds from Lending Trust plaintiffs in order to cover the increased monthly deduction, which raised the balance of their premium finance loans and increased the risk of default; (2) all but one insured trust renegotiated their financing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-02516-CAS(GJSx) | Date | October 19, 2020 |
|----------|--------------------------|------|------------------|
| Title | CREDIT SUISSE LENDING TRUST USA ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

agreement such that the cost of the increased monthly deduction is allocated between both the insured trusts and Lending Trust plaintiffs; and (3) Lending Trust plaintiffs now hold security interests in policies that are worth less than before the MDR increases.  Opp. at 13–14.

The Court concludes that plaintiffs allege sufficient facts to support a finding that Lending Trust plaintiffs suffered injury in fact.  First, they allege harm already realized upon their security interests: The MDR increases diminished the value of these policies as collateral, and Lending Trust plaintiffs have been forced to take on some of the cost of the increased monthly deductions.  Opp. at 14; see Richter, 2014 WL 6687238, at *5.  Second, they allege the risk of default on these loans has risen because the insured trusts were forced to increase the outstanding balance on these loans in order to cover the increased monthly deductions.  Opp. at 13; see Harris, 366 F.3d at 761 (increased risk of harm can constitute injury in fact).  Accordingly, on both grounds discussed above, the Court **DENIES** Transamerica's Rule 12(b)(1) motion to dismiss Lending Trust plaintiffs' claims.

## V.    CONCLUSION

The Court (1) **GRANTS** Transamerica's motion to dismiss for failure to state a claim.  Specifically, the Court **DISMISSES with prejudice** plaintiffs' breach of contract claim as alleged in paragraph 78(b) of the FAC as to policies listing "interest" as an enumerated cost factor, and **DISMISSES with prejudice** plaintiffs' claim for tortious breach of the implied covenant of good faith and fair dealing in its entirety.  Finally, the Court (2) **DENIES** Transamerica's motion to dismiss for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

|  | 00 | : | 05 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |